885 F.2d 866
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Anthony J. SPODNICK, Petitioner-Appellant,
v.
STATE OF SOUTH CAROLINA, Respondent-Appellee.
 No. 88-6072.
 United States Court of Appeals, Fourth Circuit.
 Argued July 11, 1989.
Decided Sept. 6, 1989.
 
 W. Gaston Fairey (J. Christopher Mills, Fairey & Parise, P.A. on brief) for appellant.
 Donald John Zelenka, Chief Deputy Attorney General (T. Travis Medlock, Attorney General on brief) for appellee.
 Before ERVIN, Chief Judge, and PHILLIPS and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Anthony Spodnick appeals the district court's denial of his petition for a writ of habeas corpus. Petitioner argues that there was insufficient evidence to convict him and that the admission of a bone fragment was unduly prejudicial and inflammatory. We find neither contention persuasive and affirm the judgment of the district court.
 
 I.
 
 2
 In May 1985, petitioner Anthony J. Spodnick and Charles Richard Shirah were indicted for the murder of Charles Thomas Boulware. Boulware's mutilated body was first observed on November 30, 1984, in Richland County, South Carolina, and later found on December 5, 1984, thirty miles away. His head and hands had been sawed off and were found buried eighty feet from where the body was first observed.
 
 
 3
 Shirah was tried first and found guilty of murder. However, he refused to testify against petitioner. Consequently, the case against petitioner was circumstantial in nature, consisting of various witnesses testifying as to events which occurred prior to and after the death of the victim. During petitioner's trial, the state also introduced into evidence, over petitioner's objection, a bone fragment of approximately three inches in length which had human flesh attached. The bone had been found in the same general vicinity where Boulware's mutilated torso was first observed. Petitioner was convicted of murder in August, 1985, and sentenced to life imprisonment.
 
 
 4
 Petitioner appealed his conviction to the South Carolina Supreme Court alleging that there was insufficient evidence to support his conviction and that the introduction of the bone fragment was prejudicial error. On April 13, 1987, the South Carolina Supreme Court affirmed petitioner's conviction, concluding that the introduction of the bone fragment was not prejudicial error and that petitioner's argument regarding sufficiency of the evidence was without merit.
 
 
 5
 On February 5, 1988, Spodnick filed a pro se petition for writ of habeas corpus in the District Court of South Carolina. In his petition, Spodnick once again challenged the sufficiency of the evidence and the admission of the bone fragment. On May 19, 1988, after reviewing Spodnick's petition, a United States magistrate concluded that "petitioner was granted a fair trial and that his application for habeas corpus relief should be dismissed." On October 18, 1988, the district court entered an order adopting and incorporating the magistrate's report and recommendation and dismissing the petition. This appeal followed.
 
 II.
 
 6
 Petitioner raises two contentions. First, he argues that the evidence was insufficient to support his conviction. Second, he contends that the admission into evidence of the bone fragment with human flesh was unduly prejudicial and hence in violation of his Fourteenth Amendment right to due process.
 
 A.
 
 7
 Petitioner argues that the fact he was in the presence of the victim prior to the murder is insufficient to establish his guilt. He contends that there was no evidence placing him in the presence of Boulware at the time of Boulware's death nor was there any evidence that he acted or aided in any act which caused Boulware's death. We find, however, that substantial evidence supports petitioner's conviction.
 
 
 8
 The standard that must govern our review of the evidence is critical. Pursuant to 28 U.S.C. Sec. 2254, a federal court must entertain a claim by a state prisoner that he or she is being held in "custody in violation of the Constitution or laws or treaties of the United States." Relief is appropriate under this section, however, only "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324 (1979). The Jackson standard of review applies even if the individual state's standard is a stricter one. Inge v. Procunier, 758 F.2d 1010, 1014 (4th Cir.1985).
 
 
 9
 Here, substantial evidence placed petitioner at the scene where Boulware's mutilated torso was observed and his severed hands and head were found. On November 30, 1984, Ronald Metcalfe and two friends entered the property of John Van Frank in Richland County, South Carolina, to do some target shooting. As they entered a wooded area on the property, they discovered a mutilated body, with no head or hands, partially wrapped in a tent. Metcalfe and his friends then went to inform Van Frank of their discovery. Returning to the property approximately one hour later with Van Frank, Metcalfe and his two friends noticed a maroon automobile parked in proximity to the location of the body. Van Frank approached the automobile and observed petitioner standing next to the car and Shirah inside. According to Van Frank, Shirah looked "kind of wild-eyed" and was wearing white socks on his hands. He also noticed a shovel in the back seat of the automobile, a black box wrapped in black plastic, and a blanket balled up in the corner. Van Frank testified that he then informed petitioner and Shirah that he had been told a body was nearby. Petitioner responded that he and Shirah knew of no body, and were "just digging up some dope." They then left the scene. Upon searching the area, Van Frank and the others could not again find the body. Accordingly, they called the police.
 
 
 10
 Sometime later that day, Lieutenant Fred Riddle, an investigator with the Richland County Sheriff's Department, arrived at the area where Metcalfe reported discovering the body. A thorough search of the area turned up only a human bone fragment. For the next several days, Riddle and other officers searched the area but were unable to find any traces of a body. On December 5, 1984, the team returned to the area and dug a hole approximately eighty feet from where the bone fragment was found. After digging three to four feet, they discovered a towel with a red substance on it. When the towel was removed, a human head was uncovered, as well as two severed hands. Dr. Edward Catalano, a Richland County pathologist who examined the evidence, testified that the victim's head and hands had been severed with a saw after death. On December 6, the police, accompanied by Shirah, proceeded to Wateree Swamp, approximately thirty miles from where the head and hands were found, and discovered Boulware's mutilated body without a head or hands.
 
 
 11
 Evidence also established that petitioner, Shirah and Boulware were together the day before Metcalfe discovered Boulware's body. Van Frank testified that on November 29, 1984, he observed petitioner, Shirah and a man, who appeared to be Thomas Boulware, drive down to the house they were renting on his property. Van Frank also testified that he kept two hand saws at the house that petitioner and Shirah were renting from him.
 
 
 12
 Finally, evidence indicated that petitioner had discussed killing Boulware. Michelle Pineda, who was staying at a house with petitioner and Shirah in late November, 1984, testified that on November 29, 1984, while at Cookie Bear's Bar with petitioner and Shirah, she overheard a conversation between them in which petitioner stated he was mad enough to kill Boulware. As she also testified, on the next day she, petitioner, Shirah, and Boulware went to lunch. At that time petitioner and Shirah were driving a maroon automobile. Following lunch, Pineda testified that she went to do her laundry and when petitioner and Shirah came to pick her up, Boulware was no longer with them.
 
 
 13
 It is true that the evidence here was circumstantial. We believe, however, that a jury could have found that it persuasively connected petitioner to the commission of this particular offense. When combined with Pineda's testimony, we think a rational trier of fact could have found proof of petitioner's guilt beyond a reasonable doubt.
 
 B.
 
 14
 Petitioner's contention that the admission into evidence of a bone fragment with human flesh was unduly prejudicial is also without merit. Evidentiary decisions are largely left to the sound discretion of the trial judge; a court of appeals will only overturn such decisions in "extraordinary circumstances." United States v. McDonald, 688 F.2d 224, 227-28 (4th Cir.1982). Moreover, a reversal on collateral review of a prior conviction for the introduction of improper evidence is only proper if it affects the fundamental fairness of the trial. Grundler v. North Carolina, 283 F.2d 708 (4th Cir.1960).
 
 
 15
 Here the trial judge did not abuse his discretion in admitting the bone fragment. The prejudicial effect of the bone fragment was limited. It was only two or three inches in length. The sheer gruesomeness of the case, which involved the severing of the victim's head and hands, makes it unlikely that the jury could have been inflamed by the introduction of a small bone fragment into evidence.
 
 
 16
 Additionally, the fragment had probative value. It is corroborative of Metcalfe's original discovery of the body. It is also corroborative of the inference that petitioner and Shirah moved the body. It indicates that they were not, as petitioner contends, merely in the area where the body was discovered to dig up contraband.
 
 The judgment of the district court is
 
 17
 AFFIRMED.